**BELLEFONTE UNDERWRITERS INSURANCE COMPANY, et al., Petitioners,**

v.

**Leon BROWN, et al., Respondents.**

**No. C–2797.**

Supreme Court of Texas.

Feb. 19, 1986.

Rehearing Denied March 19, 1986.

R.B. Cousins, Thompson, Coe, Cousins & Irons, Royal H. Brin, Jr., Strasburger & Price, Dallas, for petitioners.

Newton B. Schwartz, Newton B. Schwartz, P.C., Houston, Guy Cade Fisher, Fisher & Cook, Austin, Charles E. Blackley, Judge, Co. Court at Law, New Braunfels, Al Schulman, Smith, Schulman, Rawitscher & Carnahan, Houston, for respondents.

ROBERTSON, Justice.

This appeal involves claims for breach of contract, tortious interference with contract, punitive damages, libel, attorney's fees and violation of the Texas Insurance Code. Our concern is with the award of punitive damages. The case was tried to a jury which found damages for breach of an insurance contract, but failed to find any damage resulting from the allegations of tortious interference with contract. Although the jury found no damages in tort, it did find an amount as punitive damages. The trial court included the award of punitive damages in its judgment and the court of appeals affirmed this award. 663 S.W.2d at 562. We hold it was error to award punitive damages in the absence of a finding of actual damages in tort and accordingly reverse this award.

Leon Brown is the owner of Houston Wiper and Mill Supply Company, an industrial rag recycling business in Jacinto City, Texas. His business was destroyed by fire on February 21, 1978.

For over 20 years, Brown had purchased fire insurance for his business from Avrohm Wisenberg. In some years Wisenberg obtained coverage for Brown through a single company, but in other years, such as 1978, it was necessary to divide the risk among several insurance companies. At the time of the fire, Brown's fire insurance coverage was divided among seven insurance companies, one of which was Bellefonte Underwriters Insurance Company.

The building in which Brown operated his business contained a wet sprinkler system designed to activate in case of fire. The building, however, was unheated and so it was Brown's practice to drain the sprinkler system when freezing weather was forecast. This practice was recommended by Wisenberg. Because freezing weather was forecast, the sprinkler system was drained on the evening preceding the morning of the fire.

Following the fire, all seven insurance companies initially agreed to accept Brown's proof of loss, but Bellefonte later changed its position concluding that Wisenberg had misrepresented the risk associated with insuring Brown's business. After Bellefonte refused to pay Brown's claim, it actively encouraged the other six insurance companies to deny Brown's claim also. In a Telex from Bellefonte to one co-insurer, Lloyd's of London, Bellefonte communicated its erroneous conclusion that Wisenberg had misrepresented the risk and suggested that all companies join in concert to deny Brown's claim. Despite this suggestion, the other insurance companies paid their part of Brown's claim.

After Bellefonte refused to pay his claim, Brown filed suit alleging breach of contract and, after discovering the aforementioned Telex, amended to include a claim for tortious interference with contract and a claim for punitive damages. Brown also joined

Wisenberg as a defendant and Wisenberg, in turn, filed a crossaction against Bellefonte. The details of these claims are omitted because they are not material to Brown's claim for tortious interference with contract or his claim for punitive damages.

The cause was tried to a jury which found that Bellefonte had breached its contract. The jury also made the following findings regarding Brown's claim for tortious interference with contract: that Bellefonte sent a Telex to Lloyd's of London and other insurance companies which provided Brown's fire coverage; that the Telex was sent in an attempt to influence the other insurance companies to refuse Brown's claims; that the Telex was sent with the intent to injure Brown in his contractual relationships with the other participating insurance companies; that the Telex contained material misrepresentations injurious to Brown's property rights in his insurance contracts with the other insurance companies; and that the untrue representations by Bellefonte were willfully and maliciously made or were made in reckless disregard of the rights of Brown.

On the issue of actual damages, Special Issue 22 was submitted and answered as follows:

SPECIAL ISSUE NO. 22

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Leon Brown and Houston Wiper and Mill Supply Company for their damages, if any, taking into consideration the following elements of damages and none others:

1. Their loss of the actual benefits of their insurance policy with Bellefonte Underwriters Insurance Company?
Answer in dollars and cents, if any.
Answer: 300,964.00

2. Loss of profits in the past and any which they reasonably and probably will sustain in the future as the direct and proximate result of the nonpayment to them of insurance proceeds timely and in the full amounts due under said policies or policy?
Answer in dollars and cents, if any.
Answer: None

In addition the jury found that punitive damages of $1,000,000 should be awarded against Bellefonte. On these and other findings the trial court rendered judgment for Brown and ordered Bellefonte to pay damages of $1,300,964, plus attorney's fees, prejudgment interest and post-judgment interest.

Bellefonte has consistently argued there is no basis for the award of punitive damages because punitive damages cannot be assessed in connection with a breach of contract in the absence of the commission of an independent tort and a finding of actual damages in tort upon which to base the punitive damage award. The court of appeals found, however, that Brown had suffered actual damages as a result of Bellefonte's tortious interference with the other contracts of insurance. The court of appeals wrote:

... Brown suffered actual damages because the Telex caused at least one insurance company to refuse to pay his claim within the period designated in the policy, thus unnecessarily delaying the payment of funds necessary for the restart of his business. Brown was forced to sell personal property and raise the necessary funds by other means.

663 S.W.2d at 573.

Comparing the above quote with what the jury actually found as damages reveals that the court of appeals has implied a finding of actual damages in tort not made in the trial court. The only actual damages found by the jury are in answer to Special Issue 22(1) and relate to Brown's breach of contract claim. The jury found no actual damages in tort. In answer to Special Issue 22(2), the only issue bearing on Brown's tort claim, the jury found that any delay in the payment of insurance proceeds caused Brown no loss of profits.

■ Findings of fact are the exclusive province of the jury and/or trial court.

*Wisdom v. Smith,* 146 Tex. 420, 209 S.W.2d 164, 166 (1948); *Mooers v. Richardson Petroleum Co.,* 146 Tex. 174, 204 S.W.2d 606, 608 (1947). A court of appeals exceeds its authority when it implies a finding of actual damages in tort because a court of appeals cannot make original findings of fact, it can only "unfind" facts. *City of Beaumont v. Graham,* 441 S.W.2d 829, 832–33 (Tex.1969). The judgment of the trial court confirms that no finding of actual damages in tort was made in the trial court. That judgment awards actual damages of only $300,964, the amount found by the jury to be Brown's damages for breach of contract.

■ The judgment of the trial court, however, does award $1,000,000 as punitive damages. Inclusion of punitive damages in the judgment is error because punitive damages are not recoverable for breach of contract. *Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981). In a proper case, punitive damages are recoverable when the action is one in tort, but as a predicate to recovery the plaintiff must show that he has suffered actual damages. *Doubleday & Company, Inc. v. Rogers,* 674 S.W.2d 751, 753–54 (Tex.1984).

Brown argues that the present case is an exception to the above rules because it involves claims both in contract and in tort. He contends that a plaintiff may recover punitive damages in addition to contract damages when a distinct, willful tort is alleged and proved along with the contract action. In such a case, Brown concludes, actual damages in tort are no longer a predicate to punitive damages so long as the plaintiff has suffered some damages as a result of the breach of contract.

In making this argument Brown misinterprets several cases, the most recent of which is *City Products Corp. v. Berman,* 610 S.W.2d 446 (Tex.1980). In *Berman* we said:

> When a distinct, willful tort is alleged and proved in connection with a suit upon a contract, one may recover punitive damages, but even in that instance the complainant must prove that he suffered some actual damages.

*Id.* at 450. The joinder of a claim in contract with a claim in tort does not alter the basic principles: punitive damages are not awarded for breach of contract, *Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 571; the award of damages in tort is a prerequisite to recovery of punitive damages. *Doubleday & Company, Inc. v. Rogers,* 674 S.W.2d 751, 753–54.

■ The above statement from *Berman* does not create an exception to the general rules nor does it support Brown's contentions. Because Brown failed to obtain a finding of damages in tort, he failed to establish all necessary elements of his claim for tortious interference with contract. Brown is not entitled to the award of punitive damages because he failed to prove he suffered any actual damages in tort.

At oral argument Brown contended, in the alternative, that special issue 22(1) was broad enough to include an award of damages both in contract and in tort. Brown did not explain what tort might be embraced in this issue, nor did he explain what evidence supported his broad interpretation of the issue other than to say that the amount awarded by the jury was too generous to be for breach of contract alone. On its face special issue 22(1) inquired into contract damages. We cannot assume that a generous award of damages in contract also included an award for an unidentified and unsupported tort claim.

In addition to the punitive damage award, Bellefonte's application attacks the judgment for Brown for breach of contract and attorney's fees and the judgment for Wisenberg concerning libel, indemnification and violation of the Texas Insurance Code. Having found no reversible error in this part of the court of appeals' judgment, it is affirmed. That part of the judgment of the court of appeals affirming the award of punitive damages is reversed and vacated.