NO. 12-01-00127-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JOE HUDNALL ROGERS,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW #1


LIBERTY SERVICES, INC.,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 Appellant, Joe Hudnall Rogers ("Rogers"), appeals from a judgment in favor of Appellee,
Liberty Services, Inc. ("Liberty"), in Liberty's suit for property damages arising from an automobile
accident. The trial was before the court without a jury. The trial court ordered Rogers to pay Liberty
$25,117.77 in damages. In two issues, Rogers attacks the sufficiency of the evidence to support the
damage awards and asserts that the trial court failed to properly calculate prejudgment interest. Because
the evidence is legally insufficient to support the award for medical and prescription costs, we reverse
the judgment and render judgment that Liberty take nothing on that claim. Further, as the trial court did
not properly calculate prejudgment interest, we modify the judgment to reflect our calculations. In all
other respects, we affirm the trial court's judgment as modified.

 Rogers' vehicle struck a vehicle being towed by Liberty's truck, a pickup that had been specially
outfitted as a tow truck. Liberty sued Rogers to recover damages sustained by its truck and its towing
and repossession business. Liability was never contested. The trial court ordered Rogers to pay Liberty
$4,171.77 for property damage, $4,000.00 for loss of value of Liberty's truck, $14,600.00 for loss of
use and income, $1,378.00 in lost wrecker fees, and $968.00 in medical and prescription costs, for a
total of $25,117.77.

Damages

 In his first issue, Rogers asserts there is no evidence or insufficient evidence to support any of
the trial court's five damage awards. He contends that the record contains no supporting documentation
or evidence to form a basis for those awards. Instead, his argument continues, the awards are based only
on Liberty's owner's conclusory restatement of the damages he claimed to have suffered.

 If an appellant is attacking the legal sufficiency of an adverse finding of an issue on which he
did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to
support the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In reviewing
no evidence points of error, the reviewing court must consider only the evidence and inferences tending
to support the trial court's finding, disregarding all contrary evidence and inferences. Wal-Mart Stores,
Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). If there is any evidence of probative force to
support the finding, the no evidence issue must be overruled and the finding upheld. ACS Investors,
Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997).

 If a party is attacking the factual sufficiency of an adverse finding on an issue to which the other
party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence
to support the adverse finding. See Croucher, 660 S.W.2d at 58. In addressing a factual sufficiency
of the evidence challenge, this Court must consider and weigh all of the evidence and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Findings of fact are the exclusive province
of the jury and/or trial court. Bellefonte Underwriters Ins. Co. v. Brown, 704 S.W.2d 742, 744 (Tex.
1986). A trial court's findings of fact have the same force and dignity as a jury verdict and, when
supported by competent evidence, will not be disturbed on appeal. Spiller v. Woodard, 809 S.W.2d
624, 627 (Tex. App.-Houston [1st Dist.] 1991, no writ). The trial judge, as the trier of fact, may draw
reasonable inferences from the evidence. Id.

Property Damages

 The owner of damaged personal property may recover the reasonable costs of repairs necessary
to restore the damaged article to its condition immediately prior to the injury. Boies v. Norton, 526
S.W.2d 651, 653 (Tex. Civ. App.-Austin 1975, writ ref'd n.r.e.). An award of damages may not be
properly supported by simply establishing the amount paid. 2 Fat Guys Inv., Inc. v. Klaver, 928
S.W.2d 268, 273 (Tex. App.- San Antonio 1996, no writ). The damaged party must present evidence
sufficient and competent enough to justify the trier of fact's conclusion that the costs are in fact
reasonable and necessary. Id.

 In considering Rogers' no evidence complaint, we look only to the evidence supporting the trial
court's finding that Liberty sustained $4,171.77 in property damage. Wal-Mart Stores, Inc., 968
S.W.2d at 936. Liberty's owner, Dale Warnasch, explained that he owns a towing and repossession
company. He had only one repossession truck, the one damaged in the accident. He described it as a
"stealth" vehicle because it looks like a pick up but has a specially installed hydraulic unit in it that can
quickly drop down and attach itself to a vehicle whose owner has failed to make payments. He testified
that when the towed vehicle was hit by Rogers' vehicle, everything from the end of the hydraulic boom
where it was attached to the tailgate was ripped off. One tire was cut and was replaced by Goolsbee
Tire Service at a cost of $114.00. There was damage to the taillights, fender, and the bed, and there
were scratches on the door. These items were repaired by Mabry Collision at a cost of $893.80. Dan
Gattis Automotive rebuilt the rear end at a cost of $670.56. Warnasch testified that the transmission
had to be replaced. He explained that the transmission could not stand the punishment of the "truck
being flung around backwards" and "hurled in the ditch at 70 miles an hour." The transmission, which
he purchased from Polo's Foreign Car Parts, cost $1,334.37. Dan Gattis charged $268.87 to install it. 
Jack and Jill Hydraulics repaired the o-rings in the hydraulic cylinder for $65.00. Various parts were
purchased at NAPA Auto Parts for a total cost of $272.59. Allen Samuels East Texas Dodge diagnosed
the transmission problems and repaired the brakes, for a cost of $552.58.

 Dan Gattis, a mechanic who worked on Liberty's truck, testified about the damage. He
explained that the transmission was "out" and "tore up so bad it wouldn't move." He said it looked like
some teeth had broken off the planetary gears and gotten chewed up inside the transmission. He
testified that this could have been caused by the truck being pulled backwards while in drive. In
summary he explained, "I think that it busted it when it was hit."

 We disagree with Rogers that the testimony is merely conclusory. Warnasch identified the
damage done to his truck with specificity, itemizing the repairs, the parts, and the costs. He provided
receipts in support of most items, although documentary support is not required. See Holt Atherton
Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992). Both Warnasch and Gattis explained how the
transmission, which admittedly was not directly hit by Rogers' vehicle, could be destroyed in the
collision between Rogers' vehicle and the towed vehicle. There is some evidence of probative force
supporting the trial court's finding. McLaughlin, 943 S.W.2d at 430. Accordingly, Rogers' no
evidence complaint regarding property damages fails.

 In considering Rogers' factual sufficiency challenge, we review the entire record. Cain, 709
S.W.2d at 176. We find no evidence contradicting Liberty's evidence of its property damage. We
conclude that the evidence as set out above is factually sufficient to support a judgment for Liberty's
property damage in the amount of $4,171.77. Id. We overrule Rogers' legal and factual sufficiency
complaints with regard to the property damage portion of the judgment. 

Loss of Value

 Rogers asserts that there is no evidence or insufficient evidence to support a $4,000.00 award
for loss of value of Liberty's truck. He contends there is no evidence establishing the market value of
the truck before the accident, after the accident, or after it was repaired. Again, Rogers asserts that the
evidence is conclusory and undocumented. He further asserts that Liberty cannot recover damages in
an amount exceeding the original value of the truck.

 In determining the loss of market value, the amount of damages is the difference between the
market value of the vehicle before the accident and the market value of the vehicle after the accident. 
Jones v. Wallingsford, 921 S.W.2d 463, 464 (Tex. App.-Eastland 1996, no writ). The owner of a
vehicle may testify as to the value of the vehicle before and after the collision. Id.

 Warnasch, the owner of the company that owned the truck, explained that the truck is a 1991
one-ton Dodge pick up specially outfitted as a tow truck. He testified that, prior to the accident, it was
worth between $6,500.00 and $6,800.00. Even after having the truck repaired, the problems with the
rear end were never corrected. He did not use the truck in his business after the accident. He sold it
to a friend for $2,500.00. Accordingly, he testified that the accident caused a loss of value of about
$4,000.00. The record contains no controverting evidence. This evidence is legally and factually
sufficient to support the trial court's award of $4,000.00 for loss of value of the truck. McLaughlin,
943 S.W.2d at 430; Jones, 921 S.W.2d at 464. 

 Further, we are not persuaded by Rogers' complaint that the awards for property damage and
loss of value, which total $8,171.77, cannot stand because that amount is greater than the pre-accident
value of the truck. That argument fails to take into consideration that Liberty had spent $4,171.77 on
repairs for which it is entitled to reimbursement. See Boies, 526 S.W.2d at 653. The $4,000.00 award
for loss of value added to the sale price of $2,500.00 does not exceed the amount of the truck's pre-accident value. Because Liberty proved the truck's value was diminished even after the repairs were
made, it is entitled to both measures of damages. Century 21 Page One Realty v. Naghad, 760 S.W.2d
305, 309 (Tex. App.-Texarkana 1988, no writ). We overrule Rogers' legal and factual sufficiency
complaints with regard to loss of value.

Loss of Use and Income and Lost Wrecker Fees

 Rogers contends there is no evidence, or insufficient evidence, to support the $14,600.00 award
for loss of use and income or the $1,378.00 lost wrecker fees award. Rogers complains there is no
documentary evidence of Liberty's loss. He argues that while Warnasch testified that forty assignments
were cancelled because he could not respond in a timely manner, the reason for this inability is not part
of the record. This, he asserts, left the trial court to assume that each of these accounts was cancelled
because Liberty could not respond with its damaged "stealth repossession vehicle." Further, Rogers
contends Liberty did not explain why twenty-five accounts were not successfully completed within
forty-eight hours of notification, thus causing Liberty to lose a $100.00 bonus on each of those accounts,
or explain how the twenty-five lost bonuses were related to the damaged vehicle. Rogers argues that
Warnasch's bare assertions regarding lost income cannot support the trial court's award. Rogers further
contends there is no evidence of any connection between the damaged truck and Liberty's alleged lost
wrecker fees, asserting that the record does not show when that loss occurred or that it was incurred
because the stealth vehicle was out of service. He also complains that there is no documentary proof
that Liberty spent $1,378.00 to have twenty sets of keys cut.

 Where it is shown that a loss of profit is a natural and probable consequence of the act or
omission complained of, and the amount is shown with sufficient certainty, recovery of lost profits is
permitted. Copenhaver v. Berryman, 602 S.W.2d 540, 544 (Tex. Civ. App.-Corpus Christi 1980, writ
ref'd n.r.e.). Recovery for lost profits does not require that the loss be susceptible of exact calculation. 
Holt Atherton, 835 S.W.2d at 84. However, the plaintiff must do more than show he suffered some
lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. 
Id. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. Id. 
Opinions or estimates of lost profits must be based on objective facts, figures, or data from which the
amount of lost profits can be ascertained. Id. Although supporting documentation may affect the
weight of the evidence, it is not necessary to produce in court documents supporting the opinions or
estimates. Id.

 Warnasch testified that his truck was out of service for about forty-five days. He stated that he
lost business during that time because the truck was out of service. During that time period, Liberty was
assigned 167 accounts to repossess. Of those, Liberty successfully repossessed sixty-seven vehicles
with an alternative wrecker. He did not claim any losses for those sixty-seven. Forty accounts were
cancelled because, without the use of the damaged vehicle, Liberty could not respond in a timely
manner. By averaging the amounts he charged accounts at that time, Warnasch determined that a
reasonable fee for each lost repossession was $297.50, which he rounded off to $300.00. Therefore,
he testified, Liberty lost forty repossessions at $300.00 apiece, for a total of $12,000.00. Further, he
explained, when he repossesses a vehicle within forty-eight hours of assignment of the account, he is
entitled to a $100.00 bonus. According to Warnasch, due to his inability to use the damaged vehicle,
Liberty lost the forty-eight-hour bonus on twenty-six cars, for a total loss of $2,600.00 in lost bonuses. 
Due to a "flood" that destroyed most of Liberty's computer records, he had no records regarding
fourteen of the 167 accounts. He assumed he lost seven of those and asked the court for $2,100.00 to
compensate Liberty for that assumed loss. Warnasch also explained that Liberty had to have keys made
for twenty repossessed vehicles at a cost of $68.90 apiece, for a total of $1,378.00, a cost characterized
as "lost wrecker fees." Warnasch also testified that Liberty collects "something" for every account,
even if it is only a $25.00 closeout fee for closing cancelled accounts that did not result in a
repossession. He also said the $300.00 repossession fee did not include fees such as the closeout fee. 
He testified that the loss of the use of his truck for six weeks impacted his business by a loss of income
of $18,078.00. The trial court awarded Liberty $14,600.00 in lost income and $1,378.00 in lost wrecker
fees.

 In addressing Rogers' no evidence complaint, we consider only the evidence and inferences
tending to support the trial court's damage awards. Warnasch testified that he lost forty accounts, for
which he would have received $300.00 apiece, due to the fact that he did not have the use of his
damaged vehicle. He also lost the $100.00 forty-eight-hour bonus on twenty-six cars for the same
reason. He further testified that he spent $1,378.00 that he would not have had to spend had he been
able to use his damaged truck to recover a certain twenty vehicles. This is some evidence of probative
force to uphold the trial court's damage awards for loss of use and income and lost wrecker fees. 
McLaughlin, 943 S.W.2d at 430. Accordingly, Rogers' no evidence complaint regarding lost income
and wrecker fees fails.

 In addressing Rogers' factual sufficiency challenge, we consider the entire record. Cain, 709
S.W.2d at 176. Here, Warnasch testified that he lost a specific number of accounts and a specific
number of bonuses and he provided the court with a specific dollar amount that each account and bonus
would have paid. He further explained how he determined the amount of lost wrecker fees he incurred
as a result of the accident at issue. Warnasch's opinions were based on objective facts and it was not
necessary that he produce supporting documentation. Holt Atherton, 835 S.W.2d at 84. Further, we
find no evidence contradicting Warnasch's testimony. The trial court's awards for loss of use and
income and lost wrecker fees are not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain, 709 S.W.2d at 176. We overrule Rogers' legal and factual sufficiency 
complaints with regard to the trial court's awards for loss of use and income and lost wrecker fees.

Medical and Prescription Costs

 Also under his first issue, Rogers asserts the evidence is legally and factually insufficient to
support the trial court's award of $968.00 in medical and prescription costs. He complains that Liberty
did not include a request for past medical damages in its pleadings and the injured individuals are not
parties to this suit. Further, Liberty did not support its claim with medical records or bills and did not
provide evidence of the reasonableness or necessity of the charges.

 We note that Liberty did not include in its pleadings a request for damages related to personal
injuries. However, Rogers did not complain of this at trial. Unpleaded claims that are tried by consent
are treated as if they had been raised by the pleadings. Roark v. Stallworth Oil & Gas, 813 S.W.2d 492,
495 (Tex. 1991). Rogers cannot make this complaint for the first time on appeal. Id.

 A plaintiff may recover reasonable and necessary medical expenses specifically shown to have
resulted from treatment made necessary by the negligent acts of the defendant. Weidner v. Sanchez,
14 S.W.3d 353, 366 (Tex. App.-Houston [14th Dist.] 2000, no pet.). Proof of amounts charged or paid
is not proof of reasonableness and recovery of such expenses will be denied in the absence of evidence
showing the damages were reasonable and necessary. Rodriguez-Narrea v. Ridinger, 19 S.W.3d 531,
532 (Tex. App.-Fort Worth 2000, no pet.).

 Warnasch testified that Liberty paid $968.70, or roughly $980.00, in hospital bills for "these two
individuals in this accident." There is no evidence regarding the necessity or reasonableness of the
medical expenses. Therefore, the record does not support Liberty's claim for medical expenses. Id. 
Accordingly, we sustain Rogers' first issue to the extent he complains of the legal sufficiency of the
evidence to support an award for medical and prescription costs. See McLaughlin, 943 S.W.2d at 430. 
We reverse the portion of the judgment awarding Liberty $968.00 for medical and prescription costs
and render judgment that Liberty take nothing on its claim for past medical expenses. See Tex. R. App.
P. 43.3.


Prejudgment Interest

 In his second issue, Rogers asserts that the trial court improperly refused to include in the
judgment a specific dollar amount for the award of prejudgment interest. He argues that, when
determining the proper amount of prejudgment interest, the trial court should have considered the pre-litigation settlement offers made to Liberty. He contends that the judgment is therefore vague,
ambiguous, and incomplete and that the absence of a specific dollar amount has prejudiced his rights. 

 Liberty concedes error and has calculated the amount of prejudgment interest it believes itself
to be entitled to, taking into account two settlement offers made by Rogers. Liberty urges this Court
to modify the trial court's judgment to provide that Liberty recover $6,187.44 in prejudgment interest.

 A judgment in a property damage case earns prejudgment interest at the rate of ten percent a
year. Tex. Fin. Code Ann. §§ 304.003, 304.102, and 304.103 (Vernon Supp. 2001). Prejudgment
interest begins to accrue on the earlier of the 180th day after the date the defendant receives written
notice of a claim or the date the suit is filed and ends on the day preceding the date judgment is
rendered. Tex. Fin. Code Ann. § 304.104 (Vernon Supp. 2001). Prejudgment interest is computed
as simple interest. Id. If judgment for the claimant is more than the amount of a settlement offer of the
defendant, prejudgment interest does not accrue on the amount of the settlement offer during the period
that the offer may be accepted. Tex. Fin. Code Ann. § 304.105 (Vernon Supp. 2001). In computing
these time periods, the day of the act after which the time period begins to run is not included, but the
last day of the period is included. Tex. R. Civ. P. 4.

 The record shows that Rogers had notice of Liberty's claim by November 19, 1997, nine months
before Liberty's petition was filed. Accordingly, prejudgment interest began to accrue on May 18,
1998, 180 days after notice of the claim. On January 19, 1998, Rogers had offered to settle the case for
$3,707.80. That offer was rejected on April 28, 1999. Rogers made a second settlement offer on May
11, 1999, in the amount of $4,207.80, which was rejected on March 6, 2000. 

 Here, the judgment provides that Liberty shall recover prejudgment interest at the rate of ten
percent per annum from May 19, 1998 until the date of judgment, which was February 15, 2001. The
judgment does not state a dollar amount of prejudgment interest earned, nor does it reflect application
of section 304.105 to the periods when settlement offers were outstanding. 

 As the record contains the variables needed to calculate the proper award of prejudgment
interest, we shall do so. See Lege v. Jones, 919 S.W.2d 870, 875 (Tex. App.-Houston [14th Dist.]
1996, no writ). As explained above, Liberty is entitled to damages in the amount of $24,149.77. Due
to the first settlement offer, prejudgment interest does not accrue on an amount equal to that offer,
$3,707.80, from May 18, 1998, the day prejudgment interest began to accrue, until April 28, 1999, the
day that offer was rejected. The amount of prejudgment interest that accrued during that time period
was $1,937.60. Prejudgment interest accrued based on the full amount of the judgment from April 29,
1999 until May 11, 1999 in the amount of $86.06. Prejudgment interest does not accrue on $4,207.80
from May 12, 1999 until March 6, 2000 due to the second settlement offer. The accrued prejudgment
interest for that time period is $1,632.54. Finally, prejudgment interest is calculated on the full amount
of the judgment for the period March 7, 2000 until February 14, 2001 and is $2,283.90. Adding those
four figures together, Liberty is entitled to $5,940.10 in prejudgment interest. We sustain Appellant's
second issue and modify the trial court's judgment to reflect an award of $5,940.10 in prejudgment
interest.


Conclusion

 We reverse the portion of the trial court's judgment awarding Liberty damages for medical and
prescription costs and render judgment that Liberty take nothing on that claim. Further, we modify the
judgment to reflect that Liberty is awarded $5,940.10 in prejudgment interest. In all other respects, the
trial court's judgment is affirmed as modified.


 JIM WORTHEN 

 Justice


Opinion delivered November 30, 2001.

Panel consisted of Davis, C.J., and Worthen, J.

Griffith, J., not participating


(DO NOT PUBLISH)