COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-164-CV

 

 

IN THE ESTATE OF                                                                              

ALBERT
SIDNEY JENKINS, SR., DECEASED

 

                                                    

                                              ------------

 

              FROM
THE COUNTY COURT AT LAW OF WISE COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








In three issues, Appellant
Joseph Wesley Jenkins (AJoe@) challenges the legal and factual sufficiency of three findings of
fact made by the trial court, following a trial to the bench, that (1) Albert
S. Jenkins Sr. (the ADecedent@) did not make a parol gift to Joe of a five-acre tract of land; (2)
Joe did not take possession of the land under a gift from the Decedent; and (3)
Joe did not make substantial, valuable, and permanent improvements to the
land.  We affirm.

II.  BackgroundCProcedural

This is the case of the
squabbling siblings.  The Decedent had
four children, Albert Jr., Joe, David, and Charlotte, amongst whom his estate
was to be divided equally.  The Decedent
resided on 68.62 acres in Wise County and had deeded small tracts to Albert Jr.
and David but not to Joe and Charlotte. 
Albert Jr., as independent executor of the Decedent=s estate, filed an AApplication for Partition and Sale of Real Property@ because such a sale was not authorized by the Decedent=s will.  Charlotte and Joe filed
general denials to the application, while David and Albert Jr. filed waivers of
citation, as did Lindsay Ann Smith, a stepdaughter of Decedent who had been
assigned a portion of Albert Jr.=s and Charlotte=s interests.

A jury trial was held
February 10, 2004.  Joe and Charlotte
argued that the Decedent had made an oral gift of five-acre portions of the
68.62-acre tract to each of them.  The
trial court found against Joe on this issue, but found in favor of Charlotte to
the extent of a 2.18-acre gift.  The
court further found that the land could be partitioned only by sale, thereby
granting the request to sell the property. 
Only Joe has appealed the trial court=s ruling.

 








III.  BackgroundCEvidentiary

The following is a summary of
the evidence presented by Joe.  

Joe testified that he lived
on a five-acre tract of land since 1999 and indicated the boundaries on a
diagram of the land.  Joe further
testified that his father came to the site and advised him on Ahow I should do stuff.@

According to Joe, in reliance
of his father=s gift of
the land, he and his wife bought a trailer house and moved on the land.  Joe speculated that the reason Albert Jr. and
David got land deeded to them, while Charlotte and he never received a deed,
was because he had a long history of drug use coupled with numerous trips to
the penitentiary.  He testified that his
father was afraid he would trade the land for drugs.

On cross-examination, Albert
Jr. admitted that he had talked to Charlie Rhine about building a fence around
Joe=s property so that Rhine, who leased part of the sixty-eight acres for
grazing, could keep his stock in, because Joe would never close the gate and
the cattle would get out.

Terry Lewis testified he was
a water well driller and had drilled a water well on the land for both Joe and
Charlotte.  When asked why the Decedent
told him that he gave the subject land to Joe and Charlotte, Lewis replied, AHe said he [gave] all his kids five acres.@








E.B. Jenkins, who was a
brother of the Decedent, testified that he was told by the Decedent that he was
going to dig him a well and give Joe five acres.  Later, E.B. said the Decedent told him he
gave Joe five acres of land.  E.B. also
confirmed that the Decedent wanted all of his children to have four or five
acres of land.

Edgar Jenkins Jr., a nephew
of the Decedent, told the court that on the occasion after Joe was on the land,
the Decedent told Joe, in Edgar=s presence, that he needed to fence his land off.

Charles Rhine traced an
outline of Joe=s property
on the map of the 68 acres.  Rhine
further testified that Albert Jr. had a conversation with him about building a
fence to keep his cows on the property he leased for grazing and that Albert
Jr. reduced the amount of rent because Rhine could not use all of the property.


Preston Lowery testified that
he heard the Decedent say he had given land to each of his children to build a
house.

Francis Jenkins testified
that she was a sister-in-law to the Decedent and he told her that he had given
each of his children five acres of land, beginning with Charlotte, then Albert
Jr., then David, and finally Joe in 1999. 
This witness further stated that Albert Jr. and David both knew that
Decedent gave Joe and Charlotte the land.








Danny Winans, who was a
nephew of the Decedent, testified that he was with the Decedent when the Decedent
said he put Joe on the road so AI [could] keep an eye on him.@  Winans further testified the
Decedent wanted him to do some wiring on Joe=s land.  Winans also wired
Charlotte=s land.

Gary Grubbs testified that he
designed septic systems.  Grubbs
identified Joe=s exhibit
one, which was identified as an application to the Wise County Department of
Public Works for the installation of a septic system in the name of Joe and his
wife.  Grubbs further described the
location of the five acres on the map.

Della Mable Petty, whose
daughter bought groceries for the Decedent, told the court that the Decedent
told her and her daughter that he gave Joe the five acres where his trailer was
sitting.

Thomas Lynn Lackey testified
he was a friend of the Decedent and he had known him for forty-five years.  Lackey said while they were both in Arehab@ together
for heart problems, the Decedent told him he had given each of his children
five acres and most of them were living on it.

Joe testified that when the
Decedent had paid for things that went on the land Joe claimed had been gifted
to him, he repaid the Decedent in cash, but Joe could not provide proof that he
either paid for or reimbursed the Decedent for these items.








The following is evidence
presented on behalf of Albert Jr. as independent executor of the Decedent=s estate.

Joe admitted that the reason
his father did not give him a deed to the five-acre tract was that he was
afraid the property would be used to buy drugs. 
Joe stated, AAll I know
is that he didn=t want us
squandering it off. . . . He might have been afraid I was going to trade it for
some dope.@  When asked whether he paid the property taxes
on the property, Joe replied, ANo.  It wasn=t deeded to me yet.@

Albert Jr. stated that the
Decedent simply Afurnished
[Joe] land to live on.@  Albert Jr. also testified that the Decedent Aalways told me he could never give [Joe any] land because he=d probably hock it and sell it and he=d have to furnish [him] another place to live.@  The Decedent further told
Albert Jr. that he never gave such land to Joe. 
Albert Jr. was clear that the Decedent did not give Joe a deed to the
property.

Albert Jr. further testified
about a conversation he had with Decedent in which Decedent stated that he
wanted Albert Jr. to sell the real property after his death, and that the
Decedent recognized that Joe would be forced to move.  Specifically, Albert Jr. testified as
follows:








It
was probably two or three years before he died. 
And at that time Joe was living there. 
And we had been to town and come back, and we were talking.  And I asked him how he wanted me to divide
the property.  And he says C I
said, AWhat
do you want me to do about the property because how are we going to divide
it?  What do you want to do about it?@  He said, AYou=ll
just have to take care of it after I die.@  I said, AWell the only way I know to
do is to have to sell it and then divide the money and Joe and Charlotte will
have to move.@  He said, AWhatever you have to do, you
have to do . . . You just have to handle it when I die.@

 

Albert Jr. also testified that the Decedent Atold me he couldn=t [give Joe a deed to the property] because he=s always afraid that if he gave them [the] deed, then they would take
that deed and either borrow money against it and loose [sic] the property and
then he=d have to give them more property to have a place to live.@

David Jenkins testified, when
asked whether the Decedent ever gave any portion of the real property to Joe, ATo my knowledge, no.@  When asked why, he replied, ABecause he told me he could not give him any property because he was
afraid they=d sell it or
hock it off and he=d have to
give them more.@ 

Charlotte Jenkins Chapman
testified that Albert Jr.=s divorce
was the reason the Decedent did not give part of the real property to Joe, Abecause he did not want us, if we ever got a divorce, to have to go
through what [Albert Jr.] had to go through.@








Lindsay Ann Smith testified
that the Decedent invited her to live on the real property, but would not
execute or deliver a deed to her.  When
asked why Joe never received a deed to the property, she replied that the
Decedent didn=t want the
land to be Atied up with
drugCget it involved in some kind of drug use.  And that=s why he didn=tCdidn=t put it in
their names.@  Smith testified that she never moved onto the
real property because the Decedent 

never
would give us theCa
deed.  He said he would drill the water
well.  He would do septic system, set the
electricity, just move our mobile home out there.  And my husband was wise enough to say, no,
not unless we have a clear deed. 
Otherwise I would be in the same position that Joe and Charlotte is in.
. . . [H]e would not give me a clear deed to the property as he didn=t for
Charlotte and for Joe.

 

Grubbs, who installed a
septic system on the real property for Joe=s trailer, had an opportunity to speak with the Decedent concerning
the real property, and the Decedent specifically indicated that the property
did not then belong to Joe.  Asked
whether the Decedent said anything to him about giving Joe five acres, he
replied, AThe only
thing I can refer to along that line isCsaid basically put it [septic system] where he wants it, you know, if
there=s a problem, you know, be the kids later on anyway.@  [Emphasis added.]

The Decedent=s brother, E.B. Jenkins, testified that the Decedent Anever did get around to that deed . . . . They [Joe and Charlotte]
never did have it surveyed off and get the deed stated.  That=s the process of owning land, you know, or anything. . . .  Especially land.  You got to get it surveyed and then a deed.@








Albert Jr. testified that Joe
lived with the Decedent off and on for many years, at more than one location on
the real property, and at times in the Decedent=s house with him.

Edgar Jenkins, the Decedent=s nephew, testified, AIt is common knowledge that [the Decedent] wanted all of his kids to
have a place to live.@ Lindsey Ann
Smith testified that the Decedent Awanted us all to have a place to live.@  The Decedent continued to pay
all property taxes on the real property and made improvements to and paid for
the installation of the water well, septic system, and electricity, and even
bought the trailer in which Joe resided.

Gary Grubbs testified that
the Decedent directed the location and installation of the septic system for
the trailer purchased by the Decedent for Joe. 
Albert Jr. testified that the Decedent drilled a well and installed a
septic system running to the trailer. 
Similarly, Terry Lewis, a water well driller, testified that he spoke
with the Decedent and made arrangements with the  Decedent concerning the water well to run to the
trailer in which Joe resided.








Steve Goolsby, the real estate
appraiser who appraised the real property, testified that he appraised the
entire tract at $216,000.  At trial, he
stated the value could have been as high as $230,000 if Joe and Charlotte would
remove the unsightly materials and manufactured homes placed on the property by
them.  Goolsby also testified that the
manufactured homes, the cars, and other debris were not considered valuable and
did not increase the value of the real property.  He further testified that the old equipment
and items placed upon the property by Joe, considering its close proximity to
the frontage road, affects the marketability and the overall appeal of the
entire property.  Joe, Charlotte, and
Albert Jr. all testified that the trailer in which Joe resided was capable of
being moved.

Albert Jr. testified that the
Decedent paid for Joe=s well and
septic tank and did so because he Atook care of Joe and Charlotte all their life.@  Albert Jr. testified that the
check admitted into evidence as plaintiff=s exhibit 14 shows payment for Joe=s septic tank permit and water well. 
Likewise, Terry Lewis, who installed the water well, testified that the
Decedent paid for Joe=s water well
and installation.  The Decedent=s brother, E.B. Jenkins, testified that the Decedent paid for Joe=s septic system.  Danny Winans,
the electrician who wired Joe=s trailer, stated that the Decedent paid for the trailer to be wired.
Finally, David Jenkins testified that the Decedent purchased Joe=s trailers.

IV.  Standard of ReviewCLegal and Factual Sufficiency








A legal sufficiency challenge may only be sustained
when:  (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362-63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 

Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  When
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more
than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002). 








Any ultimate fact may be proved by circumstantial
evidence.  Russell v. Russell, 865
S.W.2d 929, 933 (Tex. 1993).  A fact is
established by circumstantial evidence when the fact may be fairly and
reasonably inferred from other facts proved in the case.  Id. 
However, to withstand a legal sufficiency challenge, circumstantial
evidence still must consist of more than a scintilla.  Blount v. Bordens, Inc., 910 S.W.2d
931, 933 (Tex. 1995).

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).  We are
required to consider all of the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

Findings of fact are the
exclusive province of the jury and/or trial court.  Bellefonte Underwriters Ins. Co. v. Brown,
704 S.W.2d 742, 744-45 (Tex. 1986).  A
court of appeals cannot make original findings of fact; it can only Aunfind@ facts.  See Tex. Nat'l Bank v. Karnes, 717
S.W.2d 901, 903 (Tex. 1986).

 








V.  Parol Gift of Land

The parties agree that to
relieve a parol gift of land from the Staute of Frauds it must be shown that
there was (1) a present intent to make a gift, (2) possession by the donee, and
(3) valuable and permanent improvement made upon the land by the donee with the
consent of the donor.  See Hooks v.
Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116-17 (1921); Davis v.
Douglas, 15 S.W.2d 232, 233-34 (Tex. Comm=n App. 1929, holding approved). 
Because it is necessary for Joe to prove each of the three foregoing
elements, and because the trial court found that none had been proven by Joe
with regard to the three issues in this appeal, it is necessary for him to
prevail on all three issues to warrant a reversal of the trial court=s judgment.  

VI.  Analysis

With regard to the legal
sufficiency point, and considering the evidence 
favorable to the finding if a reasonable factfinder could, and disregarding
evidence contrary to the finding the unless a reasonable factfinder could not,
and bearing in mind that anything more than a scintilla is legally sufficient
to support the finding, we hold that the evidence is legally sufficient to
support the trial court=s findings
of fact in issue in this appeal.  








With regard to the factual
sufficiency point, and considering all the evidence in the case in making a
determination, we hold that the evidence is not so weak or that evidence to the
contrary is so overwhelming that the trial court=s findings of fact in issue in this appeal should be set aside.

VII.  Conclusion

Having overruled the legal
and factual sufficiency issues brought by Joseph Wesley Jenkins, we affirm the
judgment of the trial court.

 

PER CURIAM

 

PANEL F:    MCCOY, LIVINGSTON, and DAUPHINOT, JJ.

 

DELIVERED:
May 25, 2006











[1]See Tex. R. App. P. 47.4.