

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

## No. 02-24-00496-CV

———————————————————

## J.G., Appellant

## V.

## M.G., Appellee

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 24-8617-367

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

## I. Background

Appellant J.G. (Mother)[1] appeals from the trial court's denial of a family-violence protective order against Appellee M.G. (Father). *See* Tex. Fam. Code Ann. § 81.001. In a single issue, Mother argues that the evidence is legally and factually insufficient to support the trial court's failure to find that Father committed family violence by assaulting her during an argument. We affirm the trial court's order.

## II. Brief Procedural Background[2]

At the time of the protective-order hearing, Father and Mother were married but were in the midst of divorce proceedings.[3] They have four children together. In her protective-order application, Mother alleged that Father had engaged in family violence by committing acts intended to cause her bodily injury, assault, sexual assault, or fear thereof. According to the affidavit attached to Mother's application, Father had displayed a continued pattern of alcohol and drug abuse, often indulging in such behaviors around Mother and their children. Mother also alleged that Father had attempted to engage in unwanted sexual contact with her.

---

[1]We refer to the parties by family relationship to protect the identities of their minor children.

[2]We dispense with a detailed background and summarize the evidence presented at the hearing within our discussion of Mother's issue.

[3]The Honorable Karen Alexander, presiding judge of the 393rd District Court of Denton County, heard the application for a protective order in conjunction with the parties' application for temporary orders in their divorce.

Five days after Mother filed her application, the trial court entered a temporary ex parte protective order that excluded Father from the parties' residence and prohibited him from contacting Mother or, effectively, the children.[4] The trial court also set a date for a hearing on the protective-order application. After the protective-order hearing—at which the trial court also rendered temporary orders[5] in the parties' pending divorce proceeding—the trial court denied Mother's application. In doing so, the trial court noted on the record, "I don't believe either one of them [Mother or Father] in part." However, the trial court expressed its intention that in the temporary orders it would continue the contact and conduct injunctions in the temporary ex parte protective order but make them mutual; the only exceptions would be (1) allowing Father and Mother to contact each other through Our Family Wizard; (2) excluding the restrictions on contact with the children; and (3) excluding

---

[4]At the time of the application hearing, Father had not seen the children for close to a month.

[5]Mother had sought to be named temporary sole managing conservator of the children. But on the record, the trial court named the parties joint managing conservators and ordered a possession schedule. Although the trial court did not give Father overnight possession of the children, it did not order that his possession be supervised. The trial court also stated that each party would be allowed to drug test the other.

the restriction on going to, near, or within 100 feet of the children's school or extracurricular activities or each other when facilitating possession of the children.[6]

## III. Evidence is Sufficient to Support Non-finding

### A. Standards of Review

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If no evidence supports the finding, then we will examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We will sustain the issue only if the contrary position is conclusively established. *Id.* Evidence conclusively establishes a fact when the evidence leaves "no room for ordinary minds to differ as to the conclusion to be drawn from it." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019).

When reviewing an assertion that evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the

---

[6]The trial court also ordered a custody evaluation and psychological examinations and enjoined both Mother and Father from consuming alcohol and controlled substances.

4

pertinent record evidence, we determine that the evidence supporting the finding is so weak, or so contrary, to the overwhelming weight of all evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). Factual-insufficiency issues depend on who has the burden of proof at trial. *See Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ). When the party *with* the burden of proof appeals from a failure to find, the party must show that the failure to find is against the great weight and preponderance of the credible evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681–82 (Tex. 2006).

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Thus, a court of appeals cannot make original fact findings; it can only "unfind" facts. *Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986).

**B. Evidence at Protective-Order Application Hearing**

Mother's argument on appeal focuses on a single event[7] that occurred on September 9, 2024, for which she presented video evidence that depicts only part of what happened. She argues that this video evidence, along with Father's admission that he had grabbed Mother's cell phone to prevent her recording him, conclusively proves that Father committed family violence. We first recount Mother's and Father's versions of the event and then discuss the video evidence.

Mother testified that on September 9, 2024, Father came home intoxicated around 10:30 p.m. According to Mother, she had gone to bed with two of the children in the master bedroom and was awakened at approximately 2:00 a.m. by Father's sitting at the edge of her bed watching her. This worried her, and she asked him to leave. Father told her that he didn't have to leave because he had a right to be there and could talk to her if he wanted to.[8] She began recording him with her phone.

---

[7]In addition to this event, Mother also testified that on another occasion—while the couple had been on and off and Father had left the house after she declined his sexual advances—she woke up after going to sleep to find Father digitally penetrating her. She said that she felt unsafe and violated but that Father told her it was her duty to fulfill his sexual needs. Nevertheless, the couple continued to live together but slept in separate bedrooms. Mother was the only source of this evidence. Acknowledging the standard of review by which this court is bound, Mother does not urge this evidence as supportive of her complaint on appeal. Likewise, she does not rely on her testimony that Father disciplined the children with a wooden spoon and with "flicks, like, with his thumb and middle finger or forefinger."

[8]Mother had alleged in her affidavit supporting her application for a protective order that Father had tried to pressure her into sexual intercourse, that she had denied him, that he had become angry at her rejection, and that he had shouted and verbally

6

Mother testified that when Father reached for her phone, she rolled off the bed "to get away from the boys"; according to Mother, Father then grabbed her arm and "reached through" her arm "to try to get the phone from" her. Mother stated, "[W]hen he got it, he brought it up and hit me across the neck and chin." The phone stopped recording when Father took it; after that, he wouldn't give it back to her. The trial court admitted photos depicting bruises on Mother's arm and neck that she said she had taken the next day after Father had given the phone back to her.

According to Father, he had drunk "no more than three[] whiskeys" that night and had returned home around 9:30 p.m. He went to sleep in a different bedroom. Father testified that he woke up around 2:00 a.m. to take some medicine and that Mother was already awake. She said "hey" to him, so he sat on the end of the bed and tried to start a conversation.[9] Father claimed that the two had talked there for "at least two hours"; he described himself as "[a] little frustrated" but denied shouting or being angry. He explained that he and Mother had made an agreement about recording each other:

abused her, which prompted her to make the recording. But she did not testify to the same at the hearing.

[9]In context, Father appeared to intimate that he wanted to start a conversation about reconciliation: he testified that Mother "had told [him] that day again that . . . now we're separated" but that they had engaged in "so many conversations where 'I forgive you, we're fully reconciled,'" only for Mother to "change" four to five days later.

I had made some recordings in the past . . . of some less-than of her finest moments, like we all have, and it would really frustrate and irritate her. And so we kind of made a rule that we wouldn't record one another like that and try to go below the belt and hold it over each other's head.[10]

When asked, "And do you dispute that you were trying to grab the phone?" Father said, "No." He denied that he had "lunged" for the phone or struck Mother, but he did admit that he had reached for the phone with the intent to stop the recording and that "[s]he [had] started to wrestle the phone away." He described what happened as follows:

I'm trying to grab the phone. She's holding onto it so hard -- she starts to stand up. I realize she's not letting this thing go, so I let it go. And the way she was holding it, she -- it popped her in the chin when she pulled back. And she goes, "you hit me." And I said, "I didn't hit you. The phone hit you when you pulled it back."

According to Father, Mother did not leave the room, nor did he restrain her from leaving. He put the phone on the bedside table. Father denied observing any bruises or marks on Mother in the days after the confrontation.

When cross-examined about whether he should have known that Mother "didn't want [him] in that room," Father answered, "She was wondering if I wasn't leaving because of the frustration, not because she asked -- didn't ask me to leave." He also testified, "She didn't say she didn't want me there."

---

[10]Father's evidence included a montage of photographs and videos of the family together. In one of the video clips, he recorded Mother moving from the backseat of the car to the front seat. She can be seen playfully putting her hand up to the phone to stop the recording.

The video shows only a portion of what both parties testified to. It begins with Father's sitting at the foot of the bed, directly in front of the camera and looking barely awake; his movements are slow and uncoordinated. After a few seconds, he leans forward slowly, with his hand outstretched. As his hand nears the camera, the camera shifts; the view turns sideways toward the bed and then to one of the sleeping children on the bed, as if the phone is being jostled. At that point, the recording ends.

## C. Protective-Order Law

Section 81.001 of the Family Code provides that "[a] court shall render a protective order . . . if the court finds that family violence has occurred." Tex. Fam. Code Ann. § 81.001. This finding must be made at the end of a hearing for the application of a protective order. *Id.* § 85.001(a). Section 71.004(1) of the Family Code defines family violence as "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent [infliction thereof]." *Id.* § 71.004(1).

Section 22.01(a) of the Penal Code provides that an assault offense occurs if the person

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

9

Tex. Penal Code Ann. § 22.01(a)(1)–(3). Courts have integrated Section 22.01(a) into Section 71.004(1)'s definition of family violence, so that a family-violence finding requires that a person intentionally, knowingly, or recklessly cause bodily injury; intentionally or knowingly threaten imminent bodily injury; or cause offensive or provocative physical contact to a family member. *See Myers v. Regan*, No. 05-21-00919-CV, 2023 WL 415946, at *2 (Tex. App.—Dallas Jan. 26, 2023, no pet.) (mem. op.); *Dolgener v. Dolgener*, 651 S.W.3d 242, 256 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *cf. Fontenot v. Fontenot*, 667 S.W.3d 894, 913–14 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (upholding a trial court's granting of a Family Code protective order and the finding that the husband committed family violence against his child by inflicting serious bodily injury or by placing the child in fear of imminent infliction thereof, according to Section 22.01(a)(1)–(2));[11] *Blevins v. State*, No. 02-09-00237-CR, 2010 WL 5395836, at *3 (Tex. App.—Fort Worth Dec. 30, 2010, pet. ref'd) (mem. op. on reh'g, not designated for publication) (holding that evidence was sufficient to support criminal conviction under Section 22.01(a)(3) when defendant shoved his wife but did not cause her any pain or injury).

Assault by offensive touching "requires proof that the defendant knew or should have reasonably believed that the complainant would regard the contact as

[11]The Fourteenth Court of Appeals integrated in full the Penal Code Section 22.01 definition of assault to define "assault" in Family Code Section 71.004(1). Although expressly citing Section 22.01(a)(3) as constituting grounds for a finding of family violence under Family Code Section 71.004(1), it relied only on Section 22.01(a)(1)–(2) to affirm the protective order. *See Fontenot*, 667 S.W.3d at 913–14.

offensive or provocative." *McKithan v. State,* 324 S.W.3d 582, 585 (Tex. Crim. App. 2010). As the late Judge Cathy Cochran observed in a concurrence in *McKithan*, "[t]he word 'offensive' is commonly defined as 'causing offense, specifically provocation; irritating; . . . disgusting; giving pain or unpleasant sensations; disagreeable.' Common synonyms are 'displeasing, disagreeable, distasteful, obnoxious, abhorrent, disgusting, impertinent, rude, saucy, opprobrious, insulting, insolent, abusive, scurrilous.'" *Id.* at 594 n.1 (Cochran, J., concurring) (quoting Webster's New Twentieth Century Dictionary Unabridged 1242 (1979)). And "[t]he word 'provocative' is commonly defined as 'provoking or tending to provoke' [while] common synonyms for the verb provoke are 'arouse, stir up, rouse, awake, cause, excite, move, induce, incite, stimulate, inflame, offend, irritate, anger, chafe, exasperate, incense, enrage.'" *Id.* (Cochran, J., concurring) (quoting Webster's New Twentieth Century Dictionary Unabridged 1450 (1979)). She summed up the difference between bodily-injury assault and offensive-touching assault as follows:

> Physical harm and physical force are entirely different concepts from mental or moral offensiveness. One damages the body, the other damages the mind, emotions, or sense of well-being. One is the intent to cause a physical injury, the other is the intent to cause a psychic injury. One is 'ouch,' the other is 'yuck.'

*Id.* at 594 (Cochran, J., concurring) (footnote omitted).

**D. Analysis**

Mother argues that the trial court reversibly erred by denying her application for a protective order because all of the evidence was in agreement that the phone

11

struck Mother after Father intentionally attempted to grab it from her and that this conduct meets the definition of assault in Penal Code Section 22.01(a)(3) as a matter of law. Mother contends that Father's grabbing the phone was "an act . . . intended to result in . . . assault" according to the Penal Code's non-bodily-injury definition— "intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Fam. Code Ann. § 71.004; Tex. Penal Code Ann. § 22.01(a)(3). According to Mother, because Father testified that he intended to grab the phone— which she says constitutes "physical contact"—our "analysis should hinge on whether he 'knew or should have reasonably believed' that [his] grabbing her phone was offensive or provocative." She argues that Father's failure to simply ask her to stop recording, instead "jump[ing] straight to physical dominance," indicates that he knew or should have known that grabbing the phone to attempt to stop her recording was offensive or provocative.

For Penal Code purposes, "[k]nowledge may be proven with circumstantial evidence and inferred from the acts, words, and conduct of the accused." *Hammack v. State*, 622 S.W.3d 910, 915 (Tex. Crim. App. 2021). It is subject to the same sufficiency standard as other evidence. *See, e.g.*, *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). And we cannot contravene trial-court determinations of

witness credibility.[12] *See Golden Eagle Archery*, 116 S.W.3d at 761; *Johnson v. Reed*, No. 14-24-00329-CV, 2025 WL 1742634, at \*4 (Tex. App.—Houston [14th Dist.] June 24, 2025, no pet. h.) (mem. op.) (holding evidence factually sufficient to support denial of Family Code protective order).

Here, after weighing the testimony and evidence, the trial court could have found—in the context of all the circumstances surrounding the phone-grabbing incident, including the video[13]—that Father did not know, nor should he have known, that Mother would find that particular contact to be offensive or provocative at that time. We hold that the evidence does not conclusively prove that Father committed family violence as a matter of law, nor is it against the great weight and preponderance of the credible evidence. Thus, we overrule Mother's sole issue.

---

[12]Mother points to evidence that she contends would cause a reasonable factfinder to doubt Father's veracity: a prior judgment for making a false statement to the SEC and his testimony that although he didn't recall the night of the alleged sexual assault, he nevertheless did not sexually assault Mother. Although we agree that the record contains evidence upon which the trial court could have relied to doubt Father's veracity, it does not mean that the trial court was required to believe all of Mother's testimony over Father's. *See City of Keller*, 168 S.W.3d at 820. As we have pointed out, the trial court stated on the record that it partially disbelieved both parties.

[13]Our holding should not be read to hold that a person's grabbing a phone from someone's hand can never constitute family violence or that it is insufficient evidence of such an allegation. Rather, our holding is limited specifically to the facts of this case in light of the applicable standard of review.

## IV. Conclusion

Having overruled Mother's sole issue, we affirm the trial court's denial of Mother's application for a protective order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  August 7, 2025