W. Ray **BARNES, Barnes Maintenance Co., Inc., W.R.B. Properties, and Softline Services,** Intervenor, **Appellants,**

v.

**WESTERN ALLIANCE INSURANCE COMPANY, Appellee.**

No. 2–92–034–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 16, 1992.

Rehearing Denied Jan. 26, 1993.

Schell, Nicholas, Thompson, Beene & Vaughan, L.L.P., and Russell W. Schell, Gregory Alan Scott, Baltasar D. Cruz, Dallas, for appellants.

Pohl, Bennett & Mathews, and Michael A. Pohl, Daniel L. Ellwood, James A. Dunn, Houston, for appellant Softline Services.

Oldham & Barnard, and Charles M. Barnard, Charles W. Oldham, Wichita Falls, for appellee.

Before MEYERS, DAY and CLYDE R. ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

DAY, Justice.

W. Ray Barnes, Barnes Maintenance Company, and W.R.B. Properties (Barnes) brought this action against Western Alliance Insurance Company (Western) to enforce an insurance appraisal award. Softline Services (Softline) intervened in the suit, asserting its right to 20% of the gross damages Barnes recovered from Western, pursuant to a contract between Barnes and Softline that antedated this proceeding. Barnes claimed that the roofs of two of his buildings were hail-damaged on March 1, 1988. Barnes filed a claim for this alleged loss with Western. Barnes and Western could not agree on the amount of the loss, so Barnes, through Softline,[1] demanded that an appraisal be made and an award given based on that appraisal, pursuant to

---

**1.** On February 8, 1989, Barnes and Softline entered into an agreement under which Softline agreed to investigate and document Barnes' claims for presentation to Western. A Softline representative initiated the appraisal process provided for in the insurance contract between Barnes and Western.

a provision in the insurance contract between Barnes and Western. The insurance contract provided as follows:

Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a district court of a judicial district where the loss occurred. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two when filed with this Company, shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

When Loss Payable. The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an [appraisal] award as herein provided.

Barnes appointed Gene E. Thayer, Sr. (Thayer) as his appraiser, and Western selected Dennis Olsovsky (Olsovsky). Thayer and Olsovsky were unable to agree on an umpire, so Judge Brotherton, of the 30th District Court of Wichita County, appointed Joseph E. Ashmore, Jr. (Ashmore) as umpire. Thayer and Olsovsky submitted their differences as to the actual cash value of the loss in writing to Ashmore. Ashmore and Thayer signed an appraisal award for $402,978.08 on June 6, 1990. Olsovsky did not sign the award. Western failed to challenge or pay the award sixty days after it was rendered, whereupon Barnes instituted this suit. Softline intervened in the suit on July 29, 1991.

Following a trial on the merits, the jury found that Barnes had suffered hail damage in the amount of $67,834.89 and that the appraisal award should be set aside because of fraud, accident, or mistake. The jury also found that Western had knowingly violated the Texas Insurance Code and the Deceptive Trade Practices–Consumer Protection Act.

The trial court denied Barnes' and Softline's motions for judgment non obstante veredicto to disregard the jury's finding on the damages issue and rendered judgment for Barnes for actual and treble damages, attorneys' fees, and pre- and postjudgment interest. The judgment also provided for Softline to recover 20% of Barnes' actual damages and prejudgment interest.

We affirm in part and reverse and render in part.

■■■■ Texas courts have long held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable. *Standard Fire Ins. Co. v. Fraiman*, 514 S.W.2d 343, 344–45 (Tex. Civ.App.—Houston [14th Dist.] 1974, no writ). Every reasonable presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award. *Continental Ins. Co. v. Guerson*, 93 S.W.2d 591, 594 (Tex.Civ.App.—San Antonio 1936, writ dism'd). An award entered by appraisers and an umpire can be disregarded in only two instances: (1) if the award was made without authority; or (2) if the award was made as the result of fraud, accident, or mistake. *See Fisch v. Transcontinental Ins. Co.*, 356 S.W.2d 186, 190 (Tex.Civ. App.—Houston 1962, writ ref'd n.r.e.); *Guerson*, 93 S.W.2d at 594.

Western contended at trial that the appraisal award was the result of fraud, accident, or mistake. The trial court allowed Western to submit that issue to the jury in the form of Jury Question 14.

Jury Question No. 14 asked:

Do you find from a preponderance of the evidence that the [appraisal] award should be set aside because of fraud, accident, or mistake?

Answer "Yes" or "No."

ANSWER: <u>Yes</u>

Jury Instruction No. 14-A:

You are instructed that "fraud" means:

(1) that a material representation was made; (2) that it was false; (3) that when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; *and* (6) that he thereby suffered injury.

Jury Instruction No. 14-B:

You are instructed that "accident" means an unexpected, unforseen [sic] or undesigned happening or consequence from either a known or unknown cause.

Jury Instruction No. 14-C:

You are hereby instructed that "mistake" means a situation where the appraisers and umpire were laboring under a mistake of fact by which their appraisal award was made to operate in a way they did not intend, such that the award does not speak the intention of the appraisers and umpire, or where the error resulting in the award is so great as to be indicative of gross partiality, undue influence, or corruption.

Jury Question No. 10 asked:

[F]rom a preponderance of the evidence[, w]hat sum of money, if paid now in cash, would fairly and reasonably compensate W. Ray Barnes for his damages, if any, for the storm, hail, and resulting damage to the insured buildings from the occurrence in question?

. . . .

Answer in dollars and cents for damages, if any.

ANSWER: $67,834.89

Because the jury answered Question 14 in the affirmative, the trial court based Barnes' damages on the jury's answer to Question 10 rather than on the appraisal award.

▆▆▆ In their first two points of error, Barnes and Softline each complain that the jury's affirmative finding in response to Question 14 was supported by no evidence or insufficient evidence.[2] In point of error three, Barnes contends that he was entitled to specific performance of the appraisal award as a matter of law, and Softline asserts that the trial court should have based damages on the appraisal award as a matter of law, rather than on the jury's answer to Question 10.

▆▆▆ In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985) (per curiam); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

The record reveals numerous instances in which Barnes admitted in open court that he had previously lied about the hail dam-

---

**2.** Barnes contends that the jury's factual finding was against the great weight and preponderance of the evidence. When a party without the burden of proof on a special issue complains of the jury's adverse fact finding, that party should phrase his point of error as "insufficient evidence" to support the jury's findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). Since fraud, accident, and mistake are affirmative defenses, Western, and not Barnes, had the burden of proof on Jury Question 14.

The supreme court has adopted a liberal rule of reference to the construction of points of error contained in appellate briefs, however, (*see Pool v. Ford Motor Co.*, 715 S.W.2d 629, 630 (Tex.1986) (opinion on reh'g), *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976), and Tex.R.App.P. 74(p)), and so we will construe an inappropriately phrased point of error as raising a challenge to the factual sufficiency of the evidence. *See Muhlbauer v. Muhlbauer*, 686 S.W.2d 366, 368 (Tex.App.—Fort Worth 1985, no writ).

age to the roof and about the repair costs. Barnes testified at trial as follows:

Q: Now, in your deposition you told us that the work that was done on Winn's [3] was done after the hail and because of the hail and you had to get that roof because of the hail; didn't you?

A: Yes, sir, I did.

Q: That's not true; is it?

A: That is not true.

....

Q: Have you ever at any point prior to the last five minutes ever told the defendants in this case ... that you were no longer claiming that that was part of the hail damage?

A: No, sir, I have not done that.

....

Q: ... You never told the umpire or Thayer that that new roof was not from the hail?

A: No, sir.

....

Q: And you know that you ordered a new roof on the Winn's portion before the hail?

A: Yes, sir.

Q: And although you told us in your prior testimony that the entire roof was fine before the hail, you now know that it was so bad that one section of it you had completely ordered a re-roofing job?

A: Yes, sir.

....

Q: So whatever work you were having done, not only to that roof but to the inside of the Winn's building, obviously was not work caused by that particular hail?

A: That's true.

....

Q: Back in October of 1990. And you told the court reporter that at that time you believe[d] the Winn's roof damage was from the hail, and that's a lie?

A: That's right.

....

Q: And before the deposition she had you raise your right hand and swear that everything you stated before her was true and correct?

A: That's true.

Q: Do you have anything in writing that you can show this jury that from March 1, 1988 up to December 28th, 1990 that you ever told the insurance company that you were not claiming damage to the Winn's portion of the roof?

A: No, sir.

Judge Ashmore, the umpire, testified as follows:

Q: ... If this roof [over Winn's] was under repair at the time of the hail, that repair was finished after the hail without any additional charges other than what was already going to be charged, and it was a permanent roof, and they gave a roofing guarantee, then you wouldn't expect there to be any award if you had known those facts, for that section of the roof that that roofer had done the work on?

....

A: If I had had that information, I would have factored it in. Unfortunately, I didn't have that information.

This testimony is some evidence from which the jury could reasonably have concluded, based on the definition given in Jury Instruction 14–A, that Barnes had committed fraud, thus causing the appraisal award to be based on fraud. This testimony also provides some evidence from which the jury could have concluded that the appraisal award was the result of accident or mistake, as those terms were defined in Jury Instructions 14–B and 14–C.

Because we find some evidence that supports the jury's affirmative finding to Question 14, we overrule Barnes' and Softline's first points of error.

■ We will now consider Barnes' and Softline's challenge to the factual sufficiency of the evidence.

---

**3.** Barnes claimed that the March 1988 hailstorm damaged two of his properties: the Lamar property, where Barnes maintained offices, and the Thaten property, which was a strip shopping center. Winn's Variety Stores was one of two tenants located at the Thaten property.

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.* Findings of fact are the exclusive province of the jury and/or the trial court. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex.1986). A court of appeals cannot make findings of fact; it can only "unfind" facts. *Id.*

Based on our review of the entire record on this issue, we find that there is sufficient evidence to support the jury's affirmative answer to Question 14. In addition to Barnes' admissions that he had lied about the March 1988 hail damage and correspondent repair costs, evidence was presented of the following:

(1) When questioned about whether Winn's store needed considerable work before the hail (inside and out) and whether the price changed after the hail, Barnes would not give a direct answer but could produce no evidence that his roofing contractor, Armored Roofing (Armored), changed its contract price after the hail.

(2) Armored completed its roofing job a few days after the March 1988 hailstorm, and Barnes knew of no damage to the roof after that time. Barnes refused to assume that any leakage damage to the Winn's store was not from the hail but admitted that Armored had guaranteed its work and that Barnes had never asked Armored to make good on its guarantee.

(3) Ashmore testified that he was shocked by Olsovsky's letter sent after the award was made because of the difference between Ashmore's and Olsovsky's findings and because Olsovsky was so upset about the award. Ashmore asked Judge Brotherton what he should do about the situation. Ashmore testified that Olsovsky's letter did not contain anything that would have made a differ-

ence in the award, but he also admitted that he got his figures solely from Thayer.

(4) Ashmore testified that he could not tell which part of the Thaten property roof was over Winn's store and that he did not know whether the roof he had inspected was permanent or temporary or whether his appraisal figures were for the whole roof, including the part that was roofed after the hail by Armored.

(5) Ashmore admitted that he had received two different letters from Armored that predated the appraisal award, showing that Armored had performed two repair jobs on Winn's store: one in process before and completed after the hail and one several months later. Ashmore further testified that he knew this information when he made his appraisal award.

(6) Ashmore testified that Olsovsky complained of the Winn's roof being repaired before the appraisers and umpire could inspect it so that it was difficult to tell whether there had been hail damage to the roof in 1988.

(7) Olsovsky's estimate for roof repairs was $135.00 per square. Olsovsky provided Ashmore this information, substantiated by estimates from Lydick Roofing and Weatherford Roofing, at $142.00 per square and $135.00 per square, respectively. Thayer's per-square estimate was $325.00, and Ashmore could provide no information from Thayer that backed this estimate. Ashmore testified that he had access to this information and considered it in making his award, but that he could not tell if it was for the same type of roof as the roof for which he made the award. Ashmore relied on Thayer's figures when making the award because he thought they were correct.

Barnes' testimony shows that he did not tell the truth about the 1988 hail damage to the Thaten property. Barnes' and Ashmore's testimony reveals that there was a great deal of confusion about which part of the roof on the Thaten property was actually damaged during the 1988 hailstorm, so

much so that the appraisers and umpire could not tell which part needed to be replaced because of the storm.

This evidence is sufficient for the jury to have reasonably concluded that the appraisal award was based on fraud. The jury could have found that: (1) Barnes made a material representation as to which part of the roof was actually damaged by the March 1988 hailstorm; (2) this representation was false; (3) Barnes knew it was false when he made it; (4) Barnes intended that Western, Thayer, Olsovsky, and Ashmore should act upon it; (5) Ashmore[4] did act in reliance upon it pursuant to the insurance contract between Western and Barnes; and (6) Western thereby suffered injury. Additionally, the evidence of Barnes' dishonesty and the resultant confusion as to which portion of the roof actually required replacing was sufficient for the jury to have reasonably concluded that the appraisal award was the result of accident or mistake, based on Jury Instructions 14–B and 14–C.

Because we find sufficient evidence from which the jury could have concluded that the appraisal award was the result of fraud, accident, or mistake, we overrule Barnes' and Softline's second points of error. In view of our finding with respect to Barnes' and Softline's first and second points of error, we deem it unnecessary to address their third points of error.

■ By his fourth point of error, Barnes complains that Jury Question No. 14 was impermissibly multifarious because fraud, accident, and mistake are distinct affirmative defenses that should have been submitted separately to the jury. Barnes contends that the question was improper because there is no way of knowing which of these defenses the jury intended from its affirmative finding.

We have found that evidence sufficient to prove each of these theories was presented to the jury at trial. Nonetheless, we must consider whether it is necessary that we be able to determine which of the

defenses the jury intended from its affirmative finding.

Barnes primarily relies on *European Import Co. v. Lone Star Co.*, 596 S.W.2d 287, 290 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) and *Parker v. Keyser*, 540 S.W.2d 827, 830–31 (Tex.Civ. App.—Corpus Christi 1976, no writ). The *European* court ruled that a special issue inquiring whether the execution of a guaranty agreement was obtained by fraud or duress was "multifarious and would cause the court to speculate concerning what the jury intended from an affirmative finding and as such would be improper." *Id.*, 596 S.W.2d at 290.

■ Both of these cases were decided before the 1988 amendment to Tex.R.Civ.P. 277. Rule 277 provides, in pertinent part:

In all jury cases the court *shall, whenever feasible*, submit the cause upon broad-form questions. The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict.

*Id.* (emphasis supplied). In *Texas Dep't of Human Resources v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990), the supreme court stated that "whenever feasible" means "in any or every instance in which it is capable of being accomplished." Thus, unless "extraordinary circumstances" exist, a trial court must submit broad-form questions. *Id.*

The "controlling question" in *E.B.* was whether the parent-child relationship between the mother and her children should be terminated, and not what specific ground or grounds the jury relied on to affirmatively answer the question posed. *Id.* The *E.B.* court also rejected arguments that the jury was required to agree on the specific grounds for termination. Rather, it was enough that the jurors agreed that the mother had endangered her children by doing one or more of the things listed in the jury instruction. *Id.*

---

4. We cannot determine the basis of Thayer's and Olsovsky's award because their testimony is

not before us.

In the case before us, the controlling question was whether the appraisal award was the result of fraud, accident, or mistake and not which of these specific grounds the jury relied upon to answer Question 14. Under *E.B.*, the jury was not required to agree on the specific ground that resulted in the improper appraisal award. *See also* Tex.R.Civ.P. 277 (court may submit a question disjunctively when it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists). Moreover, the trial judge complied with Rule 277 by submitting the instructions necessary to enable the jury to render a verdict on the appraisal award issue.

Because we find that Jury Question 14 was proper in light of the current version of Rule 277 and the supreme court's interpretation of that rule, we overrule Barnes' fourth point of error.

█ In its fourth point of error, Softline complains the trial court improperly limited Softline's recovery to 20% of Barnes' *actual* damages and prejudgment interest because the contract between Softline and Barnes and the jury's answer to Question 13 entitled Softline to 20% of Barnes' *gross* recovery from Western.

Jury Question No. 13 asked:

Do you find from a preponderance of the evidence that Softline Services and Plaintiffs agreed that Softline was to be paid by the Plaintiffs an amount equal to 20% of the *gross* amount recovered prior to any alterations and/or depreciation with no limitations or restrictions on the method of recovery, or for time and expenses, whichever is greater, and directed all interested parties to honor Softline Services' interest and lien in the agreement? [Emphasis supplied.]

Answer "Yes" or "No."

ANSWER: Yes

Similarly, the contract between Barnes and Softline provided that Barnes was to pay Softline "an amount equal to 20% of the gross amount recovered prior to any deductions for deductibles and/or depreciation with no limitations or restrictions on the method of recovery" for Softline's services

in collecting insurance proceeds for the hail-damaged roof from Western.

Relying on *Unauthorized Practice of Law Committee v. Jansen*, 816 S.W.2d 813, 814 (Tex.App.—Houston [14th Dist.] 1991, writ denied), Barnes asserts that Softline is precluded from any recovery. In the judgment that formed the basis of the *Jansen* appeal, the trial court permanently enjoined a public insurance adjusting firm (Jansen) from asserting a contingent fee claim against a client who has contracted with an attorney on a contingent fee basis in the same matter. *Id.* at 814. The trial court's ruling on that issue was undisputed on appeal. *Id.* Without the benefit of knowledge of the facts in that case, we cannot determine whether Jansen was in the practice of contracting with his clients on a contingency fee basis *before or after* those clients entered into contingency fee contracts with attorneys on the same matters.

In the case before us, however, Barnes contracted with Softline on February 8, 1989, *over a year-and-a-half before* Barnes filed suit against Western. We find it inconceivable that the *Jansen* trial court intended to enable insureds to avoid contingency fee contracts already in existence with insurance adjustors by subsequently contracting on a contingency fee basis with an attorney about the same matter. Moreover, we are not bound by the decisions of our sister appellate courts, much less those of the trial courts.

Barnes does not assert that Softline was engaged in the unauthorized practice of law. He does not dispute the existence of the contract with Softline or any of its terms, nor does he contend that the contract was unconscionable or the result of unequal bargaining power. Based on the evidence presented at trial, the jury concluded that Softline was entitled to recover 20% of the gross amount Barnes recovered from Western, pursuant to that contract. Aside from his mistaken reliance upon *Jansen*, Barnes has presented no evidence or authority on appeal, and we are aware of none, why he should not be required to abide by the terms of his contract with

Softline. Thus, Barnes' argument must fail.

■ Words used in a contract are to be given their plain, ordinary, and generally accepted meanings unless the instrument itself shows them to have been used in a technical or different sense. *Western Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953), *cert. denied,* 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1081 (1954). The term "gross" means "an overall total exclusive of deductions." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1002 (1981). Thus, the "gross amount" is the overall, total amount Barnes was awarded. That amount includes: (1) actual damages of $67,834.89, trebled to $203,504.67, (2) attorneys' fees of $13,500.00, (3) prejudgment interest of $16,325.99, and (4) postjudgment interest at 10% per annum from and after the date of the judgment until fully paid. Accordingly, Softline is entitled to 20% of each of these amounts.

We sustain Softline's fourth point of error.

■ In two cross-points Western complains that the trial court erred in awarding Barnes treble damages and attorneys' fees. Western directs us to TEX.BUS. & COM.CODE ANN. § 17.50(b) (Vernon Supp.1993), which provides that only consumers who prevail in a trial on the merits are entitled to recover treble damages. Western contends that Barnes did not prevail at trial because of the jury's affirmative finding in response to Question 14. This argument is without merit.

In his original petition Barnes sought to recover damages from Western for breach of contract, insurance code violations, breach of duty of good faith and fair dealing, DTPA violations, and negligence and gross negligence. The jury found that Western breached its duty of good faith, engaged in unfair or deceptive practices, in violation of the Texas Insurance Code and the Texas Deceptive Trade Practices–Consumer Protection Act, and was grossly negligent in its handling of Barnes' claim. Thus, Barnes prevailed on all of his causes of action. Moreover, Western does not dispute any of these findings.

The jury also found that Barnes had suffered damages in the amount of $67,834.89 as a result of the March 1988 hailstorm and that he was entitled to attorneys' fees in the amount of $13,566.98. Barnes did not recover the amount of damages requested in his petition, but many litigants do not recover the entire amount they seek at trial.

Western's complaint that the trial court improperly awarded Barnes attorneys' fees is without support in the record or the case law. Accordingly, this point is waived on appeal. *Lakeway Land Co. v. Kizer,* 796 S.W.2d 820, 827 (Tex.App.—Austin 1990, writ denied); TEX.R.APP.P. 74(f).

We overrule both of Western's cross-points.

We affirm the trial court's judgment, except as it relates to Softline's fourth point of error. With respect to that point, we reverse the trial court's judgment and render judgment for Softline of 20% of Barnes' gross damages recovered, including actual and trebled damages, pre- and postjudgment interest, and attorneys' fees.

The parties shall share equally the costs of this appeal.