

# NUMBER 13-23-00319-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

YOLANDA GONZALEZ,                                              Appellant,

v.

AMERICAN NATIONAL LLOYDS
INSURANCE COMPANY,                                            Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 9
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Tijerina, and Peña
Memorandum Opinion by Justice Tijerina**

Appellant Yolanda Gonzalez appeals the trial court's summary judgment in favor

of appellee American National Lloyds Insurance Company (American National). By four

issues, Gonzalez contends that the trial court's summary judgment is erroneous because

(1) the appraisal award was made by mistake, (2) "American National's payment of the

Appraisal Award did not extinguish [Gonzalez's] claim for delayed payment," pursuant to the insurance code's Texas Prompt Payment of Claims Act (the Prompt Payment Act), *see* TEX. INS. CODE § 541.151, and (3) there was a valid Rule 11 agreement concerning the mistake made when Gonzalez's appraiser signed the appraisal award. We affirm.

## I. BACKGROUND

On July 27, 2020, Gonzalez reported to American National, her insurance company, that her real property in Hidalgo County, Texas had sustained damage due to Hurricane Hanna. American National inspected the property on August 8, 2020, and thereafter notified Gonzalez that although it had found $6,417.30 in covered damage after depreciation, it would not make a payment on the claim because the amount of damage incurred was below the deductible. Gonzalez sent American National a letter of demand in December 2022, and American National conducted a re-inspection on January 5, 2022.

Gonzalez sued American National on February 17, 2022, for breach of contract and for extracontractual damages she claimed under the Texas Insurance Code and Deceptive Trade Practices Act. Gonzalez accused American National of misrepresenting her covered damages, refusing to issue a payment on the claim, failing "to disclose pertinent information regarding damages to" Gonzalez's property, and failing "to pay [her] claim within 60 days of receiving all of the items, statements, and forms required by the insurer to secure final proof of loss, of the acceptance or rejection of the claim." American National then issued a payment to Gonzalez in the amount of $1,208.55 to cover additional damages found during a re-inspection.

Gonzalez requested an appraisal that was completed on May 10, 2022. Gonzalez

2

designated Matt Serfoss as her appraiser and American National designated Micah D. Harris as its appraiser. The umpire was Randy LeBlanc. In September 2022, American National received a copy of the appraisal signed by Serfoss and LeBlanc. The appraisal estimated the cost of damages at $31,684.64. American National paid Gonzalez $15,373.06 due to depreciation and her deductible.

Gonzalez filed a motion to set aside the appraisal award claiming it was invalid, and American National filed a motion for traditional summary judgment. The trial court granted the summary judgment on July 20, 2023. This appeal followed.

## II.    STANDARD OF REVIEW

We review the trial court's granting of a traditional motion for summary judgment de novo. *Franks v. Roades*, 310 S.W.3d 615, 620 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (first citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); and then citing *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.)). "We must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law." *Id.*; *see* TEX. R. CIV. P. 166a(c). A defendant seeking a traditional summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Sanchez v. Matagorda County*, 124 S.W.3d 350, 352 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *Franks*, 310 S.W.3d

3

at 621 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)).

If the movant meets this burden, "the burden then shifts to the non-movant to disprove or raise an issue of fact as to at least one of those elements." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). However, if the movant does not meet this burden, "the burden does not shift and the non-movant need not respond or present any evidence." *Id.* Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex. App.–El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hosp.*, 148 S.W.3d at 99. A non-movant raises a genuine issue of material fact by producing more than a scintilla of evidence regarding the challenged element. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013).

## III.   BREACH OF CONTRACT

By her first issue, Gonzalez contends that the trial court should have denied American National's motion for summary judgment because Serfoss signed the appraisal award by mistake. Specifically, Gonzalez states:

> Matt Serfoss, has been in the business for about fifteen years, and had not once before encountered the challenge of an unsuccessful appraisal process which included the umpire. Given that this was a novel issue, Serfoss was unsure how to proceed, so he signed the award under the impression that doing so would resume litigation. Serfoss did not know that his signature formed a binding agreement between the parties, or otherwise he would not have signed the award.
>
> Upholding the appraisal award under these circumstances would clearly not speak to Serfoss's intention. Serfoss states in plain language in his affidavit

4

that he did not agree with the amount of the award and signed it simply because he was unsure how to proceed. While his action may be deemed a lapse in judgment, it is undeniable from his testimony that Serfoss did not support the appraisal award and did not intend to bind Ms. Gonzalez to it.

## A. Applicable Law

The insurance contract contained an appraisal clause, which is an agreed-to procedure for setting the amount of loss when a party disagrees with the insurance company's amount. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 894 (Tex. 2009). The appraisal procedure usually, as in this case, requires the appointment of a neutral appraiser or umpire to set the value of loss. *Id.*

"Access to the appraisal process to resolve disputes is an important tool in the insurance claim context, curbing costs and adding efficiency in resolving insurance claims." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814, 820 (Tex. 2019) (citations omitted); *see also In re State Farm Lloyds*, No. 13-22-00545-CV, 2023 WL 2029148, at *3 (Tex. App.—Corpus Christi–Edinburg February 15, 2023, orig. proceeding) (mem. op.). An appraisal clause "binds the parties to have the extent or amount of the loss determined in a particular way," and it should be enforced the same as any other contractual provision. *State Farm Lloyds*, 290 S.W.3d at 895. Generally, an appraisal award made in accordance with an insurance policy is binding and enforceable unless the insured proves that the award was unauthorized or the result of fraud, accident, or mistake. *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. 2004). "Every reasonable presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award." *Barnes v. W. All. Ins. Co.*, 844 S.W.2d 264, 267 (Tex. App.—Fort Worth 1992, writ dism'd by agr.).

If no party asserts a ground for setting aside the appraisal award, the appraisal award binds the parties as to the amount of the loss, and the insurer's tender of the amount owed based on the amount of the loss in the appraisal award estops the insured from bringing a breach-of-contract claim against the insurer. This estoppel rule seeks to further the object of the binding appraisal process—to avoid litigation on the issue of damages. This reasoning applies with special force where the parties agreed to provide for a binding appraisal process in their contract.

. . . .

On appeal from a summary judgment in which the trial court enforced the appraisal award, an appellate court may not reverse the summary judgment on a ground for setting aside the appraisal award unless (1) the nonmovant raised that ground in response to the motion and (2) the summary-judgment evidence raises a fact issue as to that ground.

*Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 433–34 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd) (internal citations omitted).

## B.    Discussion

American National filed its motion for traditional summary judgment on the basis that the appraisal award estopped Gonzalez from maintaining her breach of contract claim against it because "compliance with the contractual appraisal award negates any claim for breach of contract as a matter of law." American National attached an email to its motion for traditional summary judgment informing Gonzalez of the agreed-upon appraisal procedure. The email stated, in relevant part, that the appraisers would each set an amount of loss, and "If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will set the amount of loss." American National also attached the appraisal award, which is signed by Serfoss and the umpire. The appraisal award states, "We the undersigned, pursuant to our

6

appointment as appraisers and umpire in the above referenced appraisal, DO HEREBY CERTIFY, that we have conscientiously performed the duties assigned to us and have appraised the value of all losses presented as follows:" replacement cost value $31,694.64.[1] An estimate by Allstar Adjusters USA was referenced by and attached to the appraisal award. The appraisal award notes that it was made "[p]er the attached Estimate which is an integral part of the award document." The insurance policy states:

> If you fail to agree with us on the amount of loss, an appraisal of the loss may take place. In order for the appraisal procedure to take place, both parties must agree to appraisal and to be bound by the results of that appraisal.
>
> Once both parties agree to an appraisal, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If the appraisers cannot agree on an umpire within 15 days, either party may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> a. pay its own appraiser; and
>
> b. bear the other expenses of the appraisal and umpire equally.

Here, the parties do not dispute the contractual validity of the appraisal clause contained in the insurance policy as a manner of resolving a dispute as to the amount of Gonzalez's loss. Also, there is no dispute that (1) Gonzalez's claim was appraised

---

[1] American National deducted the depreciation, the deductible, and the prior payment of $1,208.55 from the award.

pursuant to the appraisal clause, (2) Serfoss and the umpire signed the appraisal award, and (3) American National tendered the award amount to Gonzalez. Therefore, it was binding and enforceable. *See Rodriguez v. Safeco Ins. Co. of Indiana*, 684 S.W.3d 789, 794 (Tex. 2024) ("[F]ull payment of an appraisal award does discharge the insurer's liability for a claim under the insurance policy."); *Breshears*, 155 S.W.3d at 344 ("In the present case, there is no evidence suggesting any fraud, accident, or mistake . . . [and the] summary judgment evidence shows that the appraisal award was made pursuant to the insurance policy, and payment was made reflecting the award determined by the appraisers appointed by each party and the independent umpire."). Accordingly, American National was entitled to summary judgment on this basis unless Gonzalez raised an issue of fact as to a ground for setting aside the appraisal award. *See Breshears*, 155 S.W.3d at 344.

On appeal, Gonzalez argues that the appraisal award is invalid because American National's appraiser "exceeded his authority by determining causation issues," American National's appraiser was not qualified "because he lacked the requisite competence and impartiality," and the appraisal was "not an honest assessment of necessary repairs." Gonzalez did not make these arguments in her response to American National's motion for traditional summary judgment. Therefore, we may not reverse the summary judgment on these grounds. *See Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 867 (Tex. App.—San Antonio 1997, no writ) ("[T]he non-movant must, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment, and failing to do so, may not later assign them as error on

appeal."); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (stating that "[w]ith the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, the non-movant must expressly present to the trial court any reasons seeking to avoid movant's entitlement [to summary judgment]"); *Zhu*, 543 S.W.3d at 433.

Next, Gonzalez argues on appeal that Serfoss's signature on the appraisal award was due to Serfoss's mistaken "impression that [signing the document] would resume litigation." According to Gonzalez, "Serfoss did not know that his signature formed a binding agreement between the parties, or otherwise he would not have signed the award." Gonzalez argues that Serfoss clearly stated "that he did not agree with the amount of the award and signed it simply because he was unsure how to proceed" and "[w]hile his action may be deemed a lapse in judgment, it is undeniable from his testimony that Serfoss did not support the appraisal award and did not intend to bind" Gonzalez.

"'Mistake' in [the] context [of signing an appraisal award] has a narrowly defined meaning: an actionable 'mistake' is one that caused an award to operate in a way the appraisers did not intend." *Garcia v. Lloyds*, 514 S.W.3d 257, 269–70 (Tex. App.—San Antonio 2016, pet. denied) (first citing *Providence Washington Ins.*, 141 S.W.2d at 1026–27; and then citing *Continental Ins. Co. of N.Y. v. Guerson*, 93 S.W.2d 591, 594 (Tex. Civ. App.—San Antonio 1936, writ dism'd) ("Any errors of judgment, honestly and fairly exercised, on the part of the [appraisers] in making the award, are matters with which the courts cannot concern themselves; but if the award returned does not embody their real judgment on the matters as submitted for their determination and award, the courts, under

9

proper pleading and proof, can and should grant relief.")). However, when an appraiser simply disagrees with an umpire's decision to adopt the estimates of the other appraiser, the appraisal award is not due to a mistake. *MLCSV10 v. Stateside Enterprises, Inc.*, 866 F. Supp. 2d 691, 702 (S.D. Tex. 2012); *see also Abdalla v. Farmers Ins. Exch.*, No. 07-17-00020-CV, 2018 WL 2220269, at *2 (Tex. App.—Amarillo May 14, 2018, no pet.) (mem. op.). Additionally, mistake is typically found where there is evidence of dishonesty, for example, an appraisal award has been found to have been the result of mistake when the insureds lied about which damage their roof sustained during a storm, which caused "a great deal confusion" concerning the damage "so much so that the appraisers and umpire could not tell which part needed to be replaced because of the storm." *Barnes*, 844 S.W.2d at 270–71. The *Barnes* court "concluded that the insureds' 'dishonesty and the resultant confusion' were 'sufficient for the jury to have reasonably concluded that the appraisal award was the result of accident or mistake.'" *MLCSV10*, 866 F. Supp. 2d at 702 (citing *Barnes*, 844 S.W.2d at 271).

Serfoss's affidavit establishes that he merely disagreed with the appraisal amount. *See MLCSV10*, 866 F. Supp. 2d at 702; *see also Abdalla*, 2018 WL 2220269, at *2. However, he did not provide any details regarding his reasons for this disagreement. Specifically, Serfoss stated:

> In my 15 years of appraisal assignments, and after multiple discussions with several of my peers, the path forward in moving this appraisal back into the Insured's attorneys' hands was unknown.
>
> While I did not agree with the latest award totals and with a lack of information on how to move forward, I intentionally but mistakenly signed the latest award. Again, my signature was intended to move the appraisal back to the insured's attorney and not lock the insured into a process that

10

was binding.

Moreover, the appraisal award clearly stated, "We the undersigned, pursuant to our appointment as appraisers and umpire in the above referenced appraisal, DO HEREBY CERTIFY, that we have conscientiously performed the duties assigned to us and have appraised the value of all losses presented as follows:" replacement cost value of $31,694.64. This language unambiguously establishes that by signing the appraisal award, Serfoss understood that he had agreed that the "appraised . . . value of all losses" was $31,694.64. *See Maxey v. Maxey*, 617 S.W.3d 207, 223 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (holding that because the contract's "language [could] be given certain and definite legal meaning, and [was] not susceptible to more than one reasonable interpretation," the contract was not ambiguous.). Serfoss's bald assertion that he did not mean to "lock" Gonzalez into a binding process is belied by the unambiguous language of the appraisal award. Gonzalez cites no authority, and we find none, providing that the situation as explained by Serfoss nullifies an appraisal award. There is no summary judgment evidence that either the umpire, American National, or its appraiser were dishonest or that there was any confusion regarding what portions of Gonzalez's property had been damaged by the hurricane or that the umpire made a mistake when he appraised the damages. *See Barnes*, 844 S.W.2d at 270–71. The parties agreed to allow the umpire to determine the appraisal award, the umpire determined the amount of Gonzalez's award, and Serfoss signed the appraisal award as provided by the insurance policy's appraisal procedure.

Under these circumstances, we are unable to conclude that Gonzalez met her

11

summary judgment burden of raising an issue of material fact that the appraisal award should be set aside due to mistake. *See id.*; *see also Cantu v. S. Ins. Co.*, 03–14–00533–CV, 2015 WL 5096858, at *4 (Tex. App.—Austin Aug. 25, 2015, no pet.) (mem. op.) ("Southern offered as summary judgment evidence the appraisal award signed by the umpire and one appraiser. Thus, Southern met its summary judgment burden to establish that the appraisal was valid and binding, and the burden shifted to [the insured] to create a fact issue as to one of the three grounds for setting aside an appraisal award."). We overrule Gonzalez's first issue.

## IV.    PROMPT PAYMENT ACT

By her second issue, Gonzalez contends that American National's payment of the appraisal award does not extinguish her claim under the Prompt Payment Act. *See* TEX. INS. CODE ANN. § 542.060 (providing that an insurer that has not complied with the Prompt Payment Act by, among other things, failing to promptly pay the claim that the insurer is liable under the insurance policy), § 542.055(a) (setting out that once the insurer receives a claim, it must acknowledge receipt, begin an investigation, request any items, statements, and forms that are necessary to evaluate the claim, and is allowed to make "additional requests" for information when necessary "during the investigation of the claim"); *Barbara Techs. Corp.*, 589 S.W.3d at 813 (explaining that "the basis for liability for damages [pursuant to the Prompt Payment Act] is 'that the requisite time has passed and the insurer was ultimately found liable for the claim'" (quoting *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003) (per curiam)). American National claimed in its motion for traditional summary judgment that it was

12

entitled to summary judgment because it paid the appraisal award.

If an insurer is liable on a claim, and fails to comply with the Prompt Payment Act, "the insurer is liable to pay the party making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of eighteen percent a year as damages, together with reasonable attorney's fees." *Zhu*, 543 S.W.3d at 436; *see also Schnell v. State Farm Lloyds*, 98 F.4th 150, 159–60 (5th Cir. 2024) (determining that the plaintiffs had "presented evidence that payment of the . . . appraisal award was a delayed payment for that damage for which State Farm had already admitted liability," and therefore, summary judgment in favor of State Farm was improper). Thus, merely paying an appraisal award does not as a matter of law extinguish Gonzalez's Prompt Payment Act claim. *See Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 135 (Tex. 2019) ("[A]n insurer's payment of an appraisal award does not as a matter of law bar an insured's claims under the Prompt Payment Act.").

However, in its motion for summary judgment and on appeal, American National asserts in the alternative that even if Gonzalez's Prompt Payment Act claim was not extinguished by paying the appraisal award amount, it had conclusively shown it had made an overpayment to Gonzalez, which satisfied the Prompt Payment Act's requirements. Specifically, American National argued that it had "made an additional payment to [Gonzalez] on September 27, 2022," and it was entitled to summary judgment. American National attached evidence showing that it had made an overpayment to Gonzalez. *See* TEX. INS. CODE ANN. § 542.060(a) (providing the Prompt Payment Act will be satisfied if the insurer pays "in addition to the amount of the claim, interest on the

amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees"). On appeal Gonzalez argues that American National did not meet its summary judgment burden because it was merely entitled to an offset by making an overpayment to her. Other than one sentence in her brief stating American National is merely entitled to an offset, Gonzalez does not cite any authority concerning this issue, and she does not provide any legal argument supporting a conclusion that summary judgment is inappropriate here. *See* TEX. R. APP. P. 38.1(i).

This Court has not addressed whether an insurer that paid the appraisal amount with the maximum amount of statutory damages with interest is entitled to summary judgment or an offset. *See Rosales v. Allstate Vehicle & Prop. Ins. Co.*, 672 S.W.3d 146, 154 (Tex. App.—Dallas 2023, pet. denied). However, the Dallas Court of Appeals held that an insurer that had paid the appraisal award with interest had "established there is no genuine issue of material fact as to its remaining liability under the" Prompt Payment Act and pointed out that cases that have determined otherwise had applied a former version of 542A. *Id.* at 154, 156 ("The only Texas opinion discussing this issue held that an insurer who paid the appraisal award and statutory interest was not entitled to summary judgment on a TPPCA claim. *Tex. Fair Plan Ass'n v. Ahmed*, 654 S.W.3d 488, 493–94 (Tex. App.—Houston [14th Dist.] 2022, no pet.). However, that case was not decided under the new Chapter 542A. . . ."). Gonzalez does not argue that *Rosales* was decided incorrectly. Without further briefing from Gonzalez on the issue, we are unable to conclude that the trial court's summary judgment was improper on this basis. *See id.*

14

at 154, 156. We overrule her second issue.[2]

## V.    RULE 11 AGREEMENT

By her third issue Gonzalez contends that the parties entered a binding Rule 11 agreement that the appraisal award was invalid. Gonzalez appears to rely on one paragraph in the email exchange where American National's attorney states, "If your appraiser signed the award by mistake, then he will need to send an affidavit concerning same. By doing so, then we do not have a valid appraisal award. This would be the best way to handle this matter. Otherwise, my client will[,] to avoid any issues or claims of non payment of an appraisal award, pay the award." Gonzalez's attorney responded that Serfass "intentionally signed the award. The mistake lies in the award itself" and "We can stipulate that we do not consider the award valid and intend to challenge it/set it aside." The record does not contain a response from American National; thus, no stipulation appears in the record.

We conclude that American National's attorney merely stated the law that an appraisal award made due to mistake is not binding, and it is not an agreement that the appraisal award in this case was made due to a mistake as evidenced by American National's attorney's statement that it would send Gonzalez the appraisal award. *See In re Robison*, 335 S.W.3d 776, 781 (Tex. App.—Amarillo 2011, orig. proceeding) ("Rule 11 was designed to avoid disputes concerning oral settlement agreements."). Additionally, the statement does not constitute an offer to settle the case by agreeing that the appraisal

---

[2] On appeal, Gonzalez does not argue that the amount of the overpayment did not satisfy the statutory interest owed by American National. Thus, we must assume, without deciding, that it did.

15

award was invalid. *See Williams v. Unifund CCR Partners Assignee Of Citibank*, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding."); *see also Conrad v. Hebert*, No. 01-09-00331-CV, 2010 WL 2431461, at *3 (Tex. App.—Houston [1st Dist.] June 17, 2010, pet. denied) (mem. op.) ("'The law of contracts applies to Rule 11 settlement agreements.'"). This is further shown by Gonzalez's attorney's statement that the parties could "stipulate" that the appraisal award was not valid. Meaning that even Gonzalez's attorney was not under the impression that the parties had entered an agreement to declare the appraisal award invalid. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) ("To satisfy the statute of frauds, 'there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony.'"). We overrule Gonzalez's third issue.

## VI.    CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
19th day of December, 2024.